IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-156-KDB

| | |
|---|---|
| SCOTT DEVON HEMPHILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GREG HUNTLEY, et al., ) | ORDER |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint [Doc. 1]. Also pending is the Plaintiff's "Motion for Order to Hold All Video Footage/Spoliation Evidence & Incorperate Enclosed 'Supportive Documents' With Complaint Filed…." [Doc. 11] (errors uncorrected). The Plaintiff is proceeding in forma pauperis. [Doc. 7].

I. BACKGROUND

The pro se Plaintiff is a pretrial detainee on charges including murder, first degree kidnapping, malicious conduct by a prisoner, communicating threats, and simple assault.[1] He filed the instant action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of North Carolina, addressing incidents that allegedly occurred at the Burke County Jail (BCJ).[2] The case was transferred to this Court on June 15, 2023, because the majority of the

---

[1] See, e.g., Burke County Case Nos. 16CRS053120, 16CRS053137, 17CRS001276, 17CRS001277, 16CRS002082, 20CR050824, 20CR052271, 20CR052329; see also Fed. R. Ev. 201.

[2] The Plaintiff is presently being held at the Granville Correctional Institution in Butner, North Carolina, as a safekeeper.

Defendants are located in this District and most of the events giving rise to this action occurred here. [Doc. 8]. The Complaint is now before the Court for initial review.

The Plaintiff names as Defendants in their official and individual capacities: Steven Whisenant, the former Burke County Sheriff;[3] Greg Huntley, a BCJ captain; FNU Viggers and FNU Kincade,[4] BCJ lieutenants; and Charles Cooper, a sergeant at the Granville Correctional Institution.

The Plaintiff, who has been a pretrial detainee for more than six years, claims that his First, Fourth, Sixth, and Fourteenth Amendment rights were violated at the BCJ between December 2019 and November 2020, and that similar violations have been occurring at the Granville CI between October 2021 and the present. [Doc. 1-1 at 1, 3-8]. For injury, he claims "mental health dimeniment; hair loss from stress, weight loss; extreem schizophrenia." [Doc. 1 at 3] (errors uncorrected). He seeks compensatory and punitive damages, and injunctive relief. [Id. at 5].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether a complaint raises an indisputably

---

[3] The current Burke County Sheriff is Robert "Banks" Hinceman. See https://www.burkenc.org/2470/Sheriffs-Office (last accessed Aug. 9, 2023); Fed. R. Ev. 201.

[4] Also spelled "Kindcade" in the Complaint. [See Doc. 1-1 at 8].

meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  Furthermore, a pro se complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.    DISCUSSION**

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law.  See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. __, 143 S.Ct. 1444 (2023).

**1) Parties**

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure.  [See, e.g., Doc. 1-1 at 3 (referring to "Sgt. Carswell, La'france," and "Cor. Hodges")]; see Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity.").  The Complaint also contains vague terms or pronouns such that the Court cannot determine the individual(s) to whom Plaintiff refers.  [See, e.g., Doc. 1-1 at 3 (referring to "'All' ranked staff

3

member's")]; see Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). The allegations that are so vague and conclusory that the Court cannot attribute them, and/or that refer to individuals not named as Defendants, are dismissed without prejudice.

**2) Due Process**

The Plaintiff claims that Defendants Huntley, Viggers and Kincade punished him by holding him in segregation, which included the loss of privileges and harsh conditions of confinement,[5] for over 180 days without notice, a disciplinary hearing, or the opportunity to appeal. [Doc. 1-1 at 2-6]. The Plaintiff further claims that his current treatment at the Granville CI "run's analogical to the same treatment at Burke Co. Jail … because of poor unit management," and that Defendant Cooper has failed to provide him due process for more than 15 disciplinary infractions. [Doc. 1-1 at 7-8].

Pretrial detainees have not been convicted of crimes, and therefore, they retain a liberty interest to remain free from punishment. Dilworth v. Adams, 841 F.3d 246, 251 (4th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." Id. (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)). "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were

---

[5] To the extent that the Plaintiff complains that certain conditions violated specific constitutional provisions, they will be discussed separately, *infra.*

4

either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

Further, a pretrial detainee is entitled to procedural due process in connection with any "punishment" imposed at a detention facility. Id. at 252. A restriction is "punishment" if the challenged condition was either "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Williamson, 912 F.3d at 178 (quoting Slade v. Hamptons Roads Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005) (quoting Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Where a pretrial detainee is placed in disciplinary segregation, he is entitled to "notice, a hearing, and a written explanation of the resulting decision." Id. at 175; see Dilworth, 841 F.3d at 253; Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974). Where a pretrial detainee is placed on administrative segregation, he must receive at least an informal, nonadversary review of the information supporting segregation within a reasonable time. Williamson, 912 F.3d at 185; see Dilworth at 255 (a pretrial detainee's placement in administrative segregation pending a disciplinary hearing "presupposes that there is, in fact, a hearing in connection with the final imposition of disciplinary action….").

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, Plaintiff's due process claims against Defendants Huntley, Kincade, Viggers, and Cooper[6] are not clearly frivolous.

---

[6] It is unclear at this juncture whether the Plaintiff's claims against the BCJ Defendants, and against Defendant Cooper, an employee of NCDAC at the Granville CI, should be allowed to proceed in a single lawsuit. See generally Fed. R. Civ. P. 20; George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three-strikes provisions of the Prison Litigation Reform Act.).

### 3) Free Speech

The Plaintiff claims that Defendants Huntley, Kincade, and Viggers violated the First Amendment by refusing to allow him to communicate with his family, and by mishandling his mail. [Doc. 1-1 at 5-8].

A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 547 (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)). A court assesses the reasonableness of a prison regulation that impinges on a prisoner's constitutional rights by considering: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it, (2) whether there are any alternative means of exercising the right that remain open to inmates, (3) the impact that accommodation of the asserted constitutional right will have on guards, other inmates, and prison resources generally, and (4) whether there are ready alternatives for furthering the governmental interest. Turner v. Safley, 482 U.S. 78, 90-92 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees).

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, Plaintiff's First Amendment claims against Defendants Huntley, Kincade, and Viggers regarding restrictions on his communication are not clearly frivolous.

### 4) Religious Exercise

The Plaintiff also claims that Defendants Huntley, Kincade, and Viggers violated the First Amendment in that he was "[n]ot allowed to practice [his] Religion, or to have a bible or religious materials inside [his] cell." [Doc. 1-1 at 4].

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that: (1) he held a sincere religious belief and (2) that his religious practice has been substantially burdened by a prison policy or practice. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989); Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (citing Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). If that threshold showing is made, the prisoner must then show that the practice or regulation is not "reasonably related to legitimate penological interests." Id. (quoting Turner, 482 U.S. at 89).

The Plaintiff's vague and conclusory allegations about his religious practice and "materials" are insufficient to plausibly state that the Plaintiff had a sincerely held religious belief, or that the Defendants substantially burdened his religious practice. The Plaintiff's free exercise claim is, therefore, dismissed without prejudice.

5) **Access to Courts**

The Plaintiff claims that Defendants Huntley, Kincade, and Viggers violated the Sixth Amendment by: denying him legal documents, a notary, copies, access to a law library, legal

books, or a pen or pencil; and that certain legal mail was returned. [Doc. 1-1 at 2-6]. He argues that this prevented him from authenticating "legal documents" and write grievances about his conditions of confinement. [Doc. 1-1 at 2-3].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. A pretrial detainee's right of access to courts when seeking assistance with a pending criminal matter is based on the Sixth Amendment right to counsel. See United States v. Chatman, 584 F.2d 1358 (4th Cir. 1978). For a pretrial detainee to state a claim that he was denied the right of access to the courts, he must allege that he was "actually injured in some way by the denial of access." Tate v. Parks, 791 F.App'x 387, 392 (4th Cir. 2019) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). "Actual injury" means that a nonfrivolous legal claim has been frustrated. See Casey, 518 U.S. at 353.

The Plaintiff has failed to state a plausible claim for the denial of access to the courts because his allegations are conclusory, and he does not identify any actual injury. His vague allusions to "legal documents," grievances, and a PREA claim are insufficient.[7] See Simpson, 900 F.2d at 35. Accordingly, the Plaintiff's claim for denial of access to the courts is dismissed without prejudice.

6) **Supervisory Liability Claim**

The Plaintiff sues Defendant Whisenant in his individual capacity, claiming that: Whisenant was on notice of the Plaintiff's treatment by way of grievances and court filings, that

---

[7] Any suggestion that the Plaintiff had a constitutional right to access the jail's grievance procedure, or to file a PREA complaint likewise fails. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) ("An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure"); De'Lonta v. Clarke, 2012 WL 4458648 at *3 (W.D. Va. Sept. 11, 2012) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."), *aff'd* De'Lonta v. Pruitt, 548 F. App'x 938 (4th Cir. 2013); Wise v. Wilson, 2017 WL 71656 (E.D. Va. Jan 6, 2017) (no constitutional right to have a PREA complaint investigated).

he is "responsible for his officer's at all times & was aware of [Plaintiff's] housesing treatments. And 'never' stopped it from happening." [Doc. 1-1 at 6-7] (errors uncorrected).

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted); see Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (explaining that "the term 'supervisory liability' is a misnomer" because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor can only be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

The Plaintiff's vague and conclusory allegations that Defendant Whisenant was aware of his treatment and failed to act are insufficient to state a plausible claim for supervisory liability. See King v. Riley, __ F.4th __, 2023 WL 4982353, at * (4th Cir. Aug. 4, 2023) ("a supervisor's 'mere knowledge' that his subordinates are engaged in unconstitutional conduct is not enough;" a complaint alleging personal liability "must contain specific allegations of each individual's conduct and state of mind") (quoting Iqbal, 556 U.S. at 677). Therefore, the Plaintiff's individual-capacity claim against Defendant Whisenant is dismissed without prejudice.

7) **Municipal Liability Claim**

The Plaintiff sues Defendants Whisenant, Huntley, Kincade, and Viggers in their official

capacities. [Doc. 1-1 and 9]. He claims that he experienced the foregoing conditions over an extended period of time because of how the facility was run. [See Doc. 1 at 2; Doc. 1-1 at 4-8].

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436 U.S. at 690 n. 55). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21 (quoting Monell, 436 U.S. at 691). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694).

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, the Plaintiff's municipal liability claim is minimally sufficient to pass initial review. Accordingly, the Plaintiff's municipal liability claim will be allowed to proceed against the Burke County Sheriff in his official capacity. The Clerk will be instructed to substitute the current Burke County Sheriff, Robert "Banks" Hinceman, for former Sheriff Whisenant. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time….").

8) **NCDAC Official Capacity Claim**

The Plaintiff purports to sue Defendant Cooper, who is a state official, in his individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claim for damages against Defendant Cooper in his official capacity does not survive initial review and will be dismissed with prejudice.

**9) Pending Motion**

In his "Motion for Order…," the Plaintiff appears to ask that: BCJ be required to preserve all camera footage from inside his cell from the incidents identified in his BCJ grievances; the Court accept into the record a transcript and Letter in support of his claims; and mail him a copy of his Motion. [Doc. 11].

The Plaintiff's request that the Court order the Defendants to preserve relevant camera footage is moot because parties have a duty to preserve material evidence "when a party reasonably should know that the evidence may be relevant to the anticipated litigation." Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001). The Plaintiff's request that the Court accept the transcript and letter is granted insofar as those documents have been entered into the record. However, the Plaintiff is cautioned that he should refrain from making further piecemeal filings. He will have the opportunity to present evidence at the appropriate time, for instance, when the Court considers dispositive motions and, if the case survives, at a trial. The Plaintiff's request for

a copy of his Motion is moot, as the Clerk of Court has already mailed him such on July 17, 2023, as a courtesy.

## IV. CONCLUSION

In sum, the Complaint has passed initial review against Defendants Huntley, Kincade, Viggers, and Cooper in their individual capacities and against Defendants Whisenant, Huntley, Kincade, and Viggers in their official capacities, as described in this Order. The claims against Defendant Cooper in his official capacity for damages are dismissed with prejudice. The remaining claims are dismissed without prejudice. The Plaintiff's "Motion for Order…" is granted in part and denied in part.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] passes initial review on the Plaintiff's § 1983 claims: for violating due process against Defendants Huntley, Kincade, Viggers, and Cooper; for violating free speech against Defendants Huntley, Kincade, and Viggers; and for municipal liability against Defendants Whisenant, Huntley, Kincade, and Viggers.

2. The Plaintiff's claims for damages against Defendant Cooper in his official capacity are **DISMISSED WITH PREJUDICE**.

3. The Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff's "Motion for Order to Hold All Video Footage/Spoliation Evidence & Incorporate Enclosed 'Supportive Documents' With Complaint Filed…." [Doc. 11] is **GRANTED IN PART AND DENIED IN PART** as described in this Order.

The Clerk is respectfully instructed to mail four blank summons forms to the Plaintiff,

which the Plaintiff shall fill out and return for service of process on **Defendants Whisenant, Huntley, Kincade, and Viggers**. Once the Court receives the completed summons from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon those Defendants.

**IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for **Defendant Charles Cooper**, who is alleged to be a current or former employees of the North Carolina Department of Public Safety.

The Clerk is respectfully instructed to mail the Plaintiff an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case. No. 3:19-mc-00060-FDW and a copy of this Order.

**IT IS SO ORDERED.**

Signed: August 14, 2023

*/s/ Kenneth D. Bell*
Kenneth D. Bell
United States District Judge